FILED
SCRANTON

AUG - 9 2001

PER _____
DEPUTY CLERK

## THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLADWIN WILSON

Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE

Respondent.

CIVIL ACTION NO. 1: 01-1226
Agency No. A41 928 716

(JUDGE CALDWELL)

DECLARATION IN SUPPORT OF
RESPONDENT'S MOTION TO
DISMISS FOR LACK OF
JURISDICTION

## Statement of Facts

Gladwin Wilson, a 41-year old native and citizen of Guyana, is a lawful

permanent resident of the United States who was admitted at New York, NY, on

April 18, 1988.  Exhibit 1.  On April 7, 1998, Wilson was convicted on his plea of

guilty in the United States District Court for the Eastern District of New York of

one count of conspiracy to utter and possess forged and counterfeit securities, in

violation of 18 U.S.C. § 371. Exhibit 2. Wilson was sentenced to one year and one day imprisonment. Exhibit 2. On October 15, 1999, an immigration judge found that Wilson had been convicted of an aggravated felony under the Immigration and Nationality Act ("INA") §§ 101(a)(43)(R) and (U), 8 U.S.C. §§ 1101(a)(43)(R) and (U) (Supp 1997), and that he was therefore not statutorily eligible for asylum under INA § 208(a), 8 U.S.C. § 1158(a) (1999). Exhibit 4. The immigration judge further found that Wilson had not carried his burden of establishing statutory eligibility for withholding of removal or relief under the Convention Against Torture. Exhibit 4. In a May 10, 2000 decision, the Board of Immigration Appeals ("Board") agreed with the findings of the immigration judge and dismissed Wilson's appeal of that decision and further ordered that Wilson's pending motions to remand be dismissed. Exhibit 3.

Wilson filed a petition for review from the Board's decision in the Third Circuit Court of Appeals. Exhibit 5. Respondent, Attorney General, filed a motion to dismiss the appeal for lack of jurisdiction based on Wilson's removability for an aggravated felony, and the court granted that motion on August 22, 2000. Exhibit 5. On July 2, 2001, Wilson filed a habeas petition in this court challenging the final order of removal issued by the Board.

## ARGUMENT

**This Court Lacks Jurisdiction to Review Wilson's Habeas Petition Where The Availability of Habeas is Limited and Where the Court of Appeals, on Petition for Review, Retains Jurisdiction to Determine Jurisdiction in the Case of an Alien Who is Removable Based on His Conviction For an Aggravated Felony.**

This Court reviews its own jurisdiction *de novo*. Steele v. Blackmun, 136 F.3d 130, 132 (3d Circuit 2001).

Wilson's sole argument in his petition is that the BIA erred in its conclusion that he was convicted of an aggravated felony. Habeas Petition at 5. Specifically, Wilson argues that the INS failed to meet its burden of proving that he was convicted of an aggravated felony under INA § 101(a)(43)(R) or (U). Habeas Petition at 5. Wilson, however, is not entitled to habeas relief in this Court to determine whether he was convicted of an aggravated felony where the Court of Appeals, on petition for review, retains exclusive jurisdiction over that issue.

### A.    The Availability of the Writ of Habeas Corpus is Limited.

There are limitations on the availability of the writ of habeas corpus. The writ is used a means of last resort so that if review is available in another forum a petitioner is obliged to bring the issue there. See Daniels v. United States, 121 S.

Ct. 1578 (2001).  In Daniels the Supreme Court stated:

> These vehicles for review, however, are not available
> indefinitely and without limitation.  Procedural barriers,
> such as statutes of limitations and rules concerning
> procedural default and exhaustion of remedies, operate to
> limit access to review on the merits of a constitutional
> claim.  'No procedural principle is more familiar to this
> Court than that a constitutional right . . . may be forfeited
> in criminal as well as civil cases by the failure to make
> timely assertion of the right before a tribunal having
> jurisdiction to determine it.'  One of the principles
> vindicated by these limitations is a 'presumption deeply
> rooted in our jurisprudence:  the 'presumption of
> regularity' that attaches to final judgments, even when the
> question is a waiver of constitutional rights.

Id. at 1583 (citations omitted); see also Santos v. Reno, 228 F.3d 591 (5th Cir.

2000); Rivera-Sanchez v. Reno, 198 F.3d 545 (5th Cir. 1999).

The Supreme Court recently held that the writ of habeas corpus is available

to criminal aliens raising pure questions of law that could not have been reviewed

by the Court of Appeals.  INS v. St. Cyr, 121 S.Ct. 2271 (2001).  In St. Cyr, the

INS argued that 8 U.S.C. § 1252 precluded jurisdiction to consider habeas petitions

under 28 U.S.C. § 2241 challenging final orders of removal.  The Court held that

habeas relief, under 28 U.S.C. § 2241, was available to criminal aliens but also

stated that "if it were clear that the question of law could be answered in another

judicial forum, it might be permissible to accept the INS' reading of 1252

[precluding judicial review]."  Id. at 2287.  In other words, if the Court of Appeals

had retained jurisdiction over the petition for review, habeas would not lie.  See Daniels, 121 S. Ct. at 1583.

Review of Wilson's challenge to the Board's determination that he was convicted of an aggravated felony is available in another forum.  In fact, Wilson brought that issue before the Court of Appeals in his original petition for review. Exhibit 5.  Therefore, the writ, as a means of review, is not available to Wilson. Additionally, as discussed below, the Court of Appeals retained jurisdiction over Wilson's claims, thereby providing him an avenue for review and eliminating the need for a writ of habeas corpus.

**B.     The Court of Appeals, on Petition for Review, Retains Jurisdiction to Determine Its Jurisdiction.**

The Court of Appeals, on petition for review, retains jurisdiction over final orders of removal pursuant to INA § 242(b)(1), 8 U.S.C. § 1252(b)(1)[1].  That jurisdiction, however, is limited by INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C). Specifically, the statute provides that final orders of removal cannot be reviewed

---

[1] Section 242(b)(1) states in part:  The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.

where the alien "is removable by reason of having committed a criminal offense

covered in [8 U.S.C. § 1227(a)(2)(A)(iii)][2]."

The Third Circuit has recognized that, under INA § 242(a)(2)(C), the Court

of Appeals lacks jurisdiction to consider a final order of removal against an alien

convicted of one or more specified criminal offenses including those aliens who

have been convicted of aggravated felonies. Liang v. INS, 206 F.3d 308 (3d Cir.

2000). That court, in Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001), further

held that the court was not completely deprived of jurisdiction and that the

limitation announced in the statute "comes into play, however, only when two facts

. . . exist: (1) the petitioner is an alien (2) who is deportable by reason of having

been convicted of one of the enumerated offenses." Thus, in order to determine

whether or not jurisdiction to review the final order of removal is in fact limited by

the statute, the Court of Appeals retains "jurisdiction to determine the jurisdiction"

over the case, and necessarily decides the issue of removability. See also

Fernandez-Bernal v. Attorney General, ___ F.3d ___ 2001 WL 814934 (11th

Circuit July 19, 2001); Tapia Garcia v. INS, 237 F.3d 1216, 1220-21 (10th Cir.

2001); Mahadeo v. Reno, 226 F.3d 3, 9 (1st Circuit 2000); Bell v. Reno, 218 F.3d

---

[2] Section 1227(a)(2)(A)(iii) provides: "Any alien who is convicted of an aggravated felony at any time after admission is deportable.".

-6-

86, 89-90 (2d Circuit 2000); <u>Santos v. Reno</u>, 228 F.3d 591, 597 n. 11 (5th Circuit

2000); <u>Flores-Miramontes v. INS</u>, 212 F.3d 1133, 1135 (9th Circuit 2000); <u>Lewis</u>

<u>v. INS</u>, 194 F.3d 539, 542 (4th Circuit 1999); <u>Diakite v. INS</u>, 179 F.3d 553, 554

(7th Circuit 1999) (per curiam)).

### C.    The Third Circuit Considered Wilson's Present Claims When it Granted the Government's First Motion to Dismiss.

Moreover, in the instant case, the Court of Appeals actually decided the

issue. The Board issued a final order of removal against Wilson on May 10, 2000.

Exhibit 4. Wilson then appealed that final order to the Third Circuit Court of

Appeals. Exhibit 5. The government then filed a motion to dismiss Wilson's

appeal for lack of jurisdiction based on his removability for an aggravated felony.

That motion was heard by the Third Circuit and was granted on August 22, 2000.

It is presumed that where that court retained jurisdiction to determine whether

Wilson was convicted of an aggravated felony that the court did, in fact, make that

determination in considering the government's motion to dismiss[3]. Wilson cannot,

---

[3] The Third Circuit recognized in <u>Drakes</u> that determining the requisite jurisdiction facts in a case on appeal is relatively easy. <u>Drakes</u>, 240 F.3d at 247. The court went on to recognize:

[W]here . . . a criminal statute on its face fits the INA's deportability classification, all convictions under that statute necessarily render an alien deportable. To go beyond the offense as charged and scrutinize the underlying facts would change our inquiry from a jurisdictional one into a full consideration of the merits. Such an approach would fly in

-7-

simply because he was unhappy with the court's ruling in that proceeding, bring the same issue before this Court in a habeas petition. Where the Court of Appeals retained jurisdiction over an issue and did, in fact, decide that issue, this court lacks jurisdiction to further adjudicate Wilson's claim. Davies, 121 S. Ct. at 1583.

**D.    Liang v. INS, 206 F.3d 308 (3d Cir. 2000) is Distinguishable.**

Wilson relies on the decision in Liang to argue that his habeas petition is properly before this Court. He is mistaken, however, because Liang is distinguishable.

The court in Liang determined that "IIRIRA's permanent provisions do not preclude district courts from exercising their jurisdiction to hear petitions for habeas corpus following removal orders where the petitioner has been convicted of an aggravated felony." Liang, 206 F.3d at 308 (3d Cir. 2000). The instant case differs from Liang in one important respect. The Third Circuit there found that "[l]ike Catney and Morel, petitioners in the cases before us do not dispute that they are aliens with criminal convictions that render them removable under the INA. In other words, they do no dispute that they are aliens who are 'removable by reason

---

the face of the jurisdiction limiting language of IIRIRA.
Id. at 247-248 (citing Hall v. INS, 167 F.3d 852, 856 (4th Cir. 1999).

of having committed a [specified] criminal offense.'" Id. at 323[4]. Here, however,

Wilson does dispute that he is an alien with a criminal conviction that renders him

removable under the INA. Thus, the issue of whether the Court of Appeals retains

"jurisdiction to determine jurisdiction" by ascertaining whether an alien is covered

by the jurisdictional bar at section 242(a)(2)(C) of the INA by reason of being

removable for one of the crimes listed therein was not before the court in Liang.

The issue was, however, before the Court of Appeals in Wilson's petition for

review and, as discussed above, that court properly adjudicated the claim.

**Wilson's Habeas Petition Fails to State a Claim for Relief Where *Res Judicata* Prohibits Reexamination of Matters Actually Decided in a Prior Case and Where He Was Convicted of an Aggravated Felony for Purposes of the Statute.**

A complaint may be dismissed under Fed. R. Civ. Pro. 12(b)(6) for failure to

state a claim upon which relief can be granted if "it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations."

Doe v. Delie, ___ F.3d ___ 2001 WL 817680 (3d Cir. July 19, 2001) (citing

Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984)). Because

---

[4] The court in Liang concluded that, because the petitioners were raising statutory challenges to the BIA's interpretation of recent amendments to the INA and constitutional challenges to the statute itself, seeking the availability of a discretionary waiver under former INA § 212(c) they could seek habeas relief in the district court and therefore jurisdiction over those issues did not lie in the Court of Appeals. Liang, 206 F.3d at 323.

Wilson's claim is barred by *res judicata* there is no set of facts which he can allege that would entitle him to relief.  Moreover, based on his facts as alleged, he was convicted for an aggravated felony.

**A.   Wilson's Claims Are Prohibited by *Res Judicata*.**

**1.   The Standard for *Res Judicata*.**

The principle of res judicata is a long-standing one:

> A fundamental precept of common-law adjudication,
> embodied in the related doctrines of collateral estoppel
> and res judicata, is that a "right, question or fact distinctly
> put in issue and directly determined by a court of
> competent jurisdiction cannot be disputed in a
> subsequent suit between the same parties or their privies."

Montana v. United States, 440 U.S. 147, 152 (1979), quoting Southern Pacific R.

Co. V. U.S., 168 U.S. 1, 48-49 (1897).  "Under res judicata, a final judgment on the

merits bars further claims by parties or their privies based on the same cause of

action." Id.  "To preclude parties from contesting matters that they have had a full

and fair opportunity to litigate protects their adversaries from the expense and

vexation attending multiple lawsuits, conserves judicial resources, and fosters

reliance on judicial action by minimizing the possibility of inconsistent decisions."

Id. at 153-54.

The Third Circuit has recognized that "claim preclusion, otherwise known as

*res judicata*, prohibits reexamination not only of matters actually decided in the

prior case, but also those that the parties might have, but did not, assert in that

action." Parkview Assoc. Partnership v. City of Lebanon, 225 F.3d 321, 329 (3d

Cir. 2000). In Bd. of Trustees v. Centra, 983 F.3d 495, 504 (3d Cir. 1992), the

court went on to explain that claim preclusion "requires (1) a final judgment on the

merits in a prior suit involving (2) the same parties or their privities; and (3) a

subsequent suit based on the same cause of action."

In deciding whether two suits are based on the same "cause of action," a

court should examine whether there is an "essential similarity of the underlying

events giving rise to the various legal claims." United States v. Athlone Indus., 746

F.2d 977, 984 (3d Cir. 1984); see also Restatement (Second) of Judgments § 24

cmt. a ("The present trend is to see claim in factual [as opposed to legal] terms and

to make coterminous with the transaction regardless of the number of substantive

theories...that may be available to the plaintiff . . . ."). Additionally, the courts have

recognized three instances where the same cause of action is not implicated. The

first instance is where new facts develop as to "material change of conditions,"

giving rise to a new cause of action. Labelle Processing v. Swarrow, 73 F.3d 308,

313-14 (3d Cir. 1995). The second is where an intervening statute materially

changes the position of the parties. <u>Artukovic v. INS</u>, 693 F.2d 894, 898 (9th Cir. 1982). The third is where the burden of persuasion has shifted from the time of the first action to the second. <u>Id</u>.

**2.    Wilson's Claims Respecting His Removal Order Were Previously Decided by the Third Circuit.**

Wilson's habeas petition to this Court is precluded by *res judicata*. First, it is clear that the Third Circuit issued a final order on August 22, 2000, granting the government's motion to dismiss Wilson's petition for review in that court for lack of jurisdiction. Wilson cannot reasonably deny that he is subject to a prior order which afforded him the opportunity for judicial review.

Moreover, it is also clear that Wilson is the same party who brought that appeal before the Third Circuit and that he is the same party against which that final order was issued. In making this determination the court, as discussed above, examined the jurisdictional facts, <u>i.e.</u>, whether Wilson was an alien who had committed an aggravated felony.

Similarly, there is no doubt that Wilson is trying to raise the same issues in this Court. The instant case is exactly the same as the petition for review. Wilson does not attempt to argue that new facts have developed in his case that would materially change his condition or that his position has been changed by an

-12-

intervening statute.  Furthermore, he does not allege that the burden of proof has shifted since the time of his petition for review.

Wilson's argument that the Board erred in determining that his conviction in New York was an aggravated felony is not enough to overcome the hurdle of *res judicata*.

> [T]he doctrine of collateral estoppel, or issue preclusion, may bar a claimant from relitigating issues decided in a previous action.  For instance, if the ALJ had found that Swarrow had not established that he was a "miner" under the Act, Swarrow may not later relitigate that issue (unless, of course, he subsequently worked as a miner).

Labelle Processing, 72 F.3d at 314 n.10.  Here, Wilson's removal proceedings have determined that he has no right to remain in the United States in the future.  INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984).  That issue has been decided by the Third Circuit, and he may not relitigate the issue unless he has since attained the right to remain in the United States.  Labelle Processing, 72 F.3d at 314 n.10.  The burden of establishing that he has a lawful basis for remaining in the United States falls squarely upon his shoulders.  INA § 291, 8 U.S.C. § 1361 (2000).  Because Wilson is an aggravated felon, he is removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).  Therefore, he cannot meet his burden of proof.  Thus, by virtue of claim preclusion, he is without recourse to additional judicial review.

**B.    Wilson's Claim Otherwise Lacks Merit Because He Was Convicted of an Aggravated Felony.**

The Board found Wilson deportable under INA section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of an aggravated felony.  Wilson challenges the Board's finding because he claims that his crime is not an aggravated felony for purposes of INA §§ 101(a)(43)(R) & (U), 8 U.S.C. §§ 1101(a)(43)(R) & (U).  Wilson's challenge lacks merit, however, because the crime for which he pled guilty and the sentence he received clearly meet the statutory requirements to qualify him as a removable aggravated felon.

Wilson was charged with deportability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on his aggravated felony conviction under sections 101(a)(43)(R) & (U) of the INA.  Specifically, Wilson pled guilty in the United States District Court to one count of conspiracy to utter and possess forged and counterfeited securities in violation of 18 U.S.C. § 513(a)[5].

---

[5] Wilson was found guilty of conspiracy under 18 U.S.C. § 371 to commit the underlying crime under 18 U.S.C. § 513(a).  That section reads as follows:

> Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

An examination of section 513(a) requires a finding that a conviction of conspiracy to commit that crime necessarily entails finding of a conspiracy to commit the type of crime listed in INA § 101(a)(43)(R). It is either forging or counterfeiting that makes a person liable under Section 513(a). The indictment in this case alleges both and the defendant pled guilty to both under Count I of the indictment. Section 101(a)(43)(R) provides that an aggravated felony is "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year." Clearly, Wilson's plea of guilty to conspiracy to utter and possess forged and counterfeited securities constitutes an offense "relating to" counterfeiting or forgery.

Additionally, it is clear from the language of section 101(a)(43)(R) that a mere conviction is not sufficient to show an aggravated felony. In this case, the Federal District Court sentenced Wilson to one year plus one day. It is a clear issue of law that Wilson was sentenced to a term of imprisonment of at least one year. 8 U.S.C. 1101(a)(48)(B).

Wilson's conviction also falls within the parameters of INA § 101(a)(43)(U) where he actually pled guilty to a conspiracy offense. That section describes an aggravated felony as "an attempt or conspiracy to commit an offense described in

this paragraph." Because Wilson was convicted of conspiracy to commit a crime

defined in section 101(a)(43)(R) of the Act, he also qualifies as an aggravated felon

under section 101(a)(43)(U).

# CONCLUSION

For the foregoing reasons, the Court should dismiss Wilson's habeas corpus petition for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

DAVID M. BARASCH                     STUART E. SCHIFFER
United States Attorney               Acting Assistant Attorney General

MARY CATHERINE FRYE                  DAVID V. BERNAL
Assistant U.S. Attorney              Assistant Director


ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
JAMIE DOWD
Summer Law Intern
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044
(202) 616-9344

ATTORNEYS FOR RESPONDENT

# EXHIBIT 1


## Notice to Appear

JUL-07-1999  08:48      NG DISTRICT COUNSEL            215 656 1245  P.12/14

migration            on Service                                              Notice to Appear

removal proceedings        240 of the Immigration and Nationality Act

File No. A41 928 716

the Matter of:

espondent:    Gladwin          WILSON          INMATE# 47748-053  PRD 6/15/99

SCI ALLENWOOD, P.O. BOX 1500                        PA      17887       (570) 547-1950
WHITE DEER
                          (Number, street, city, state and ZIP code)                    (Area code and phone number)

] 1. You are an arriving alien.
] 2. You are an alien present in the United States who has not been admitted or paroled.
] 3. You have been admitted to the United States, but are deportable for the reasons stated below.

he Service alleges that you:

'ou are not a citizen or national of the United States:    A

'ou are a native of Guyana and a citizen of Guyana;    A

'ou were admitted to the United States at New York, New York on or about April 18, 1988 as an Immigrant;    A

'ou were, on April 7, 1998, convicted in the United States District Court at the Eastern District of New York for the offense of the    D
lefendant and others conspired to utter and possess forged and counterfeit securities, in violation of Title 18, United States Code, Section
371.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following
provision(s) of law:

Section 237(a)(2)(A)(iii) of the of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have
)een convicted of an aggravated felony as defined in section 101(a)(43) of the Act.    D

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8 CFR 208.30(f)(2)    ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:  IMMIGRATION
COURT, 1600 CALLOWHILL STREET, ROOM 400, PHILADELPHIA, PA 19130
                          (Complete Address of Immigration Court, including Room Number, if any)
on ____TO BE SET____  at  ____TO BE SET____  to show why you should not be removed from the United States based on the
         (Date)              (Time)
charge(s) set forth above.

                                              Acting          IHP DIRECTOR
                                                        (Signature and Title of Issuing Officer)

Date:  APR 0 5 1999

                                                        ALLENWOOD, PA
                                                        (City and State)

See reverse for important information

Form I-862 (Rev. 4-1-97)

JUL-07-1999  09:45        NS DISTRICT COUNSEL                        215 656 7268  P.13/16
reverse for important information

Warning: Any statement you make may be used against you in removal proceedings.

Alien Registration: This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

Representation: If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

Conduct of the hearing: At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

Failure to appear: You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

## Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

Before: _____        _____
                                          (Signature of Respondent)

_____                 Date: _____
(Signature and Title of INS Officer)

---

## Certificate of Service

This Notice to Appear was served on the respondent by me on _____APR 0 5 1999_____, in the following manner and in
compliance with section 239(a)(1)(F) of the Act:                    (Date)

☒ in person        ☐ by certified mail, return receipt requested        ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the _____ENGLISH_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____                 MATTHEW WOTERMAN AGENT
(Signature of Respondent if Personally Served)

# EXHIBIT 2

## Criminal Judgment

FTA

Miraghiatti

Needs AS paper work -

1/5
5/15/98

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
UNITED STATES OF AMERICA
        -v-

6/16/98
Um miraghiott
FTA

GLADWIN WILSON,
                Defendant.
-------------------------------------x

JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT

CASE NUMBER:CR-97-43-01(FB)
GEORGE LEWIS, ESQ.  403-9675
14 METROTECH CENTER, SUITE 213
BROOKLYN, NY 11201
Defendant's Attorney & Address

4/14/9
L/m

XX   pleaded guilty to count ONE OF THE INDICTMENT.

      Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve
the following offenses:

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| TITLE 18 USC | THE DEFENDANT AND OTHERS CONSPIRED | 1 |
| SECTION 371 | TO UTTER AND POSSESS FORGED & COUNTERFEIT SECURITIES. | |

The defendant is sentenced as provided in pages 2 through     of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

XX   Count TWO is dismissed on the motion of the United States.
XX   It is ordered that the defendant shall pay to the United States a special
      assessment of $50.00 which shall be due XX immediately:

It is further ORDERED that the defendant shall notify the United States Attorney
for this district within 30 days of any change of residence or mailing address
until all fines, restitution, costs, and special assessments imposed by this
Judgment are fully paid.

Defendant's Soc. Sec #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

Defendant's Mailing Address:

 3126 DWIGHT AVENUE

FAR ROCKAWAY, NY 11691

APRIL 3, 1998
Date of Imposition of Sentence

THE HONORABLE FREDERIC BLOCK

April 7, 1998
Date

A TRUE COPY ATTEST
Date:
ROBERT C. HEINEMANN
CLERK OF COURT

By:

MIKE J. INNELLI
DEPUTY CLERK

FEB 20 199

A TRUE COPY
ATTEST
DATED:
ROBERT C. HEINEMANN
CLERK
BY

Defendant: GLADWIN WILSON                     Judgment - Page   of
Case Number: CR-97-43-01(FB)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau
of Prisons to be imprisoned for a term of <u>TWELVE MONTHS (12) AND ONE DAY.</u>

___ The Court makes the following recommendations to the Bureau of Prisons:
    THAT THE DEFENDANT BE INCARCERATED IN THE NORTH EAST REGION

___ The defendant is remanded to the custody of the United States Marshal.
___ The defendant shall surrender to the United States Marshal for this
    district,

            ___ at _____ a.m./p.m. on _____
            ___

XX  The defendant shall surrender for service of sentence at the institution
    designated by the Bureau of Prisons

            XX    before 2:00 p.m. on ___5/15/98___.
            XX    as notified by the United States Marshal.
            ___   as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____

Defendant delivered on __2-11-99__ to __ALF__ at
__FA__, with a certified copy of this Judgment.


                        United States Marshal

                    By _____

Defendant: GLADWIN WILSON                    Judgment - Page    of
Case Number: CR-97-43-01(FB)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>THREE (3) YEARS WITH THE FOLLOWING SPECIAL CONDITION: THAT HE MAKE RESTITUTION TO KEY BANK IN THE SUM OF $10,000.00 ACCORDING TO THE FOLLOWING SCHEDULE: $3,000.00 BY THE END OF THE FIRST YEAR, $3,000.00 BY THE END OF THE SECOND YEAR, AND $4,000.00 BY THE END OF THE THIRD YEAR.</u>

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page).  If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release.   The defendant shall comply with the following additional conditions:

____  The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

Defendant: GLADWIN WILSON                    Judgment - Page    of
Case Number: CR-97-43-01(FB)

XX   The court adopts the factual findings and guideline application in the
presentence report.

                                    OR

____   The court adopts the factual findings and guideline application in the
presentence report except   (see attachment, if necessary)

Guideline Range Determined by the Court:

          Total Offense Level:_____13_____

          Criminal History Category:____I_____

          Imprisonment Range:_12__to_18___months

          Supervised Release Range:_2___to_3_____years

          Fine Range:$_2,000.00_____to $_20,000.00_____

               XX   Fine is waived or is below the guideline range, because of
               the defendant's inability to pay.

          Restitution:    S_     .  .. _____

               ____   Full restitution is not ordered for the following reason(s):

XX   The sentence is within the guideline range, that range does not exceed 24
months, and the court finds no reason to depart from the sentence called for
by application of the guidelines.

                                    OR

___   The sentence is within the guideline range, that range exceeds 24 months,
and the sentence is imposed for the following reason(s):

___   The sentence departs from the guideline range

          ____   Upon motion of the government, as a result of defendant's substantial
          assistance.

          ____   for the following reason(s):

Defendant: GLADWIN WILSON                    Judgment - Page      of
Case Number: CR-97-43-01(FB)

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;

2) the defendant shall not leave the judicial district without the permission of the court or probation officer;

3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

5) the defendant shall support his or her dependents and meet other family responsibilities;

6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;

8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

# EXHIBIT 3

## Decision of the Board

JUL-31-2001  11:33        INS DISTRICT COUNSEL                        215 656 7148    P.03/16

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:    A41 928 716 - York

Date:    MAY 1 0 2000

In re:  GLADWIN WILSON

IN REMOVAL PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENT:   Frank Billings Lindner, Esquire

ON BEHALF OF SERVICE:    Daryl F. Bloom
                         Assistant District Counsel

CHARGE:

Notice:   Sec.   237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                 Convicted of aggravated felony

APPLICATION:   Asylum; withholding of removal; deferral of removal under Convention Against
               Torture

    In an oral decision rendered October 15, 1999, the Immigration Judge found the respondent to be removable as charged above.  The Immigration Judge pretermitted the respondent's application for asylum under 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a), and denied his applications for withholding of removal and deferral of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), and the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), as implemented, Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105-277, div. G, § 2242 (Oct. 21, 1998), implemented in Regulations Concerning the Convention Against Torture; Interim Rule, 64 Fed. Reg. 8477 (Feb. 19, 1999).  The respondent has appealed.  While the appeal was pending before the Board, the respondent filed two motions.[1]  The appeal will be dismissed and the motions denied.  The respondent's request for oral argument is denied.  8 C.F.R. § 3.1(e).

    The lawful permanent resident respondent is a 41-year-old native and citizen of Guyana.  On April 7, 1998, the respondent was convicted on his plea of guilty in the United States District Court

---

[1] Although styled as motions to reopen, as the respondent's appeal is pending before the Board, we will construe the motions as ones to remand.  *See* 3.2(c)(4).

A41 928 716

for the Eastern District of New York of one count of conspiracy to utter and possess forged and counterfeit securities, in violation of 18 U.S.C. § 371, and sentenced to incarceration for 1 year and 1 day (Exh. 2). Based on this conviction, the Immigration Judge found that the respondent had been convicted of an aggravated felony under sections 101(a)(43)(R) and (U) of the Act. 8 U.S.C. §§ 1101(a)(43)(R), (U), and therefore not statutorily eligible for asylum under section 208(a) of the Act. The Service conceded, and the Immigration Judge found, that the respondent's crimes were not "particularly serious" for purposes of section 241(b)(3)(B)(ii) of the Act. *See Matter of L-S-*, Interim Decision 3386 (BIA 1999) (noting that a determination whether an alien convicted of an aggravated felony and sentenced to less than 5 years' imprisonment has been convicted of a "particularly serious crime," thus barring the alien from withholding of removal, requires an individual examination of the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction).

Recognizing that the respondent's crime was not "particularly serious" under the Act, we note that in order to qualify for withholding of removal, an alien must demonstrate that his or her "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3). An alien must establish a "clear probability" of persecution on account of one of the enumerated grounds. *INS v. Stevic*, 467 U.S. 407, 413 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution. *Id.* at 429-30. The relief of withholding of removal is mandatory, in that once an alien has established that he or she qualifies for relief under section 241(b)(3), such relief must be granted. The respondent has also applied for protection under the Convention Against Torture. The burden of proof is on the applicant for withholding or deferral of removal under the Convention Against Torture to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2).

The Immigration Judge found that respondent had not carried his burden of establishing statutory eligibility for withholding of removal or relief under the Convention Against Torture. On appeal, the respondent argues that the Immigration Judge erred in evaluating the evidence and that he established his eligibility for withholding of removal and protection under the Convention Against Torture.

The respondent claims that he fears harm from the Guyanan government because of his support of the People's National Party (PNC), a political opposition party in Guyana. The respondent acted as a recruiter for a PNC chapter in New York City, which raised funds to send to the PNC in Guyana. One of the respondent's PNC contacts in Guyana was an individual named Mohammed Singh (Tr. at 80-81). During a trip to Guyana in October 1993, the respondent was arrested and detained for 3 days by the police, and questioned for several hours about Mr. Singh (Tr. at 84-87). The respondent left Guyana the day after his release, and has not returned since that incident. He stated that he resigned from the New York PNC chapter in October 1994, because he was scared (Tr. at 94).

2

A41 928 716

In this case, the Immigration Judge did not make a specific credibility finding and we presume that the respondent has testified credibly. However, finding that a respondent has testified credibly does not resolve whether relief should be granted; rather the specific content of the testimony, and any other relevant evidence in the record, is also considered. *Matter of E-P-*, Interim Decision 3311 (BIA 1997).

After reviewing the record of proceedings, we agree with the well-reasoned decision of the Immigration Judge that the respondent has not carried his burden of proof to establish that it is more likely than not that he will be persecuted or killed upon his return to Guyana. We agree with the Immigration Judge that the respondent in this case testified only generally about the basis for his fear of returning to Guyana, and was lacking in detail regarding matters he would be expected to have more knowledge. Especially troubling is the respondent's lack of knowledge as to the status of Mr. Singh, the very person to whom his claim of persecution is so centrally linked.

We also note that the respondent has not provided even the most rudimentary documentation to support his claims. We have held that where an alien's claim relies primarily on personal experiences not reasonably subject to verification, corroborating documentary evidence of the alien's particular experience is not required. However, where it is reasonable to expect such corroborating evidence for certain alleged facts pertaining to the specifics of the respondent's claim, such evidence should be provided or an explanation should be given as to why such information was not presented. *Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997); *Matter of Dass*, 20 I&N Dec. 120 (BIA 1989). In this case, the respondent's explanation is deficient. The respondent claims that because of his incarceration and the necessity of making collect phone calls, he was unable to provide any proof of his political affiliation with the local PNC group. However, the respondent, represented by counsel, may reasonably be expected to provide evidence of a New York based political group to which he claimed a 4-year membership, as well as statements in the form of affidavits sufficient to corroborate specific facts alleged by the respondent that are within the personal knowledge of the affiants. In this case, the respondent has two brothers who reside in Brooklyn, and parents and seven siblings who continue to live in Guyana. The respondent's explanation that he could not acquire documents because of his incarceration is not supported by any evidence and does not appear to be logical. In this case we believe that it is reasonable to expect the respondent to provide corroborating affidavits if nothing more.

Accordingly, we agree with the Immigration Judge that the respondent has not satisfied his burden of proof for withholding of removal or relief under the Convention Against Torture. The respondent has not shown that it is more likely than not that he will be persecuted or tortured if he is returned to Guyana.

We also note that by motion filed March 9, 2000, the respondent argues that the Immigration Judge erred in finding the respondent removable as the charge was insufficiently plead. The respondent argues that the Immigration and Naturalization Service failed to plead the charge with sufficient particularity to give the respondent notice of the charges lodged against him. We disagree. The specification of the subparagraph under which removability has been charged and the

A41 928 716

specification of the crime for which the respondent has been convicted which forms the basis for that charge are sufficient notice to the respondent of the charge of removability. It is not necessary for the Notice to Appear to specify all the subparagraphs of the definition of aggravated felony in section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) to give the respondent adequate notice of the charge against him. Additionally, the respondent here appears to be ably assisted by counsel, and the defects in the Notice to Appear do not appear to leave either the respondent or the Immigration Judge to guess the Service's theory of the case or to inhibit the respondent's exercise of his statutory or due process hearing rights. We find that the respondent's argument of procedural error is without merit, and this motion is denied.

In a second motion, the respondent argues his case should be reopened in order to allow him to proceed with his naturalization application. The respondent claims that after an August 1996, naturalization interview he was informed his application for naturalization had been granted, but was never contacted by the Service to take the oath of allegiance. However, the respondent, through counsel, admitted that he was not a citizen of the United States (Tr. at 13). The respondent's argument is insufficient to form a basis for overturning the Immigration Judge's decision or remanding the record for further proceedings.

The respondent has not established his eligibility for withholding of removal under the Act or deferral of removal under the Convention Against Torture. We also note, like the Immigration Judge, the many sympathetic factors in this case, including the respondent's lengthy residence in the United States, marriage to a naturalized United States citizen, and as a parent of three children dependent upon him for support. However, the respondent has failed to establish his eligibility for any form of relief from removal that is within the power of the Immigration Judge or this Board to grant. Accordingly, the following orders will be entered.

ORDER: The appeal is dismissed.

FURTHER ORDER: The respondent's motions to remand are denied.

FOR THE BOARD

4

**EXHIBIT 4**


**Oral Decision of the Immigration Judge**

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE IMMIGRATION COURT
YORK, PENNSYLVANIA

File No.:  A 41 928 716                          October 15, 1999

In the Matter of

GLADWIN WILSON,              )        IN REMOVAL PROCEEDINGS
                             )
        Respondent           )

CHARGES:      INA Section 237(a)(2)(A)(3) (aggravated felony) by
              reference to INA Section 101(a)(43)(R) and INA
              Section 101(a)(43)(U)

APPLICATIONS: Political asylum, withholding of deportation to
              Guyana, and withholding and deferral of
              deportation under the Convention Against Torture

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Frank Lindner, Esquire            Jeffrey Bubier, Esquire and
205 Floral Vale Boulevard         Theodore Murphy, Esquire
Yardley, PA  19067                Assistant District Counsels
                                  3400 Concord Road
                                  York, PA  17402

## ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent became a resident of the United States in
1988. He departed the United States a brief time the following
year to get married and his wife now lives with him in the United
States and the couple have three children, all of whom are
residents of the United States.

Throughout his stay in the United States, he has not been
convicted of any crimes, except for one which is the focus of

LG

this proceeding, and that is a conviction on April 7, 1998, in

U.S. District Court of the Eastern District of New York, under 18

U.S.C. § 371, which is the general conspiracy statute.  The

indictment has been submitted into evidence as Exhibit 8B and it

contains two counts.  The first is the conspiracy to utter and

possess forged and counterfeited securities of an organization,

to wit:  checks from the Lyndon Baines Johnson Health Clinic,

with the intent to deceive another person, an organization, in

violation of 18 U.S. Code 513(a).  Count II charges that the

respondent did actually knowingly and intentionally utter and

possess forged and counterfeited securities of the Lyndon Baines

Johnson Health Clinic with the intent to deceive another person,

an organization.  This was charged under 18 U.S.C. § 513(a), 18

U.S.C. 2, and 18 U.S.C. 3551 et seq. (which relates to sentencing

provisions).  18 U.S.C. 2 relates to aiding and abetting and it

appears that the respondent was charged under the theory that the

actions he carried out did not necessarily constitute forgery,

possession of a forged or counterfeited security (in this case it

is a check) but that he aided and abetted others to do so, which

makes the count similar to the conspiracy count, although it also

leaves open the possibility for a conviction that even without

the help of others or without helping others, he himself

possessed, with intent to deceive somebody, a forged or

counterfeited security.

The respondent has denied both the factual allegation and

)LG

the ground of deportability that results from this charge.  On

the basis of the certified record of conviction, the Court finds

that the respondent was, in fact, convicted under Title 18 U.S.C.

371 for the crime in question.  It makes specific reference to

Count I of the indictment.  The Court has Count I of the

indictment from which it has just read and it is clear that the

underlying offense is 18 U.S.C. § 513(a), the only offense listed

as the one supporting the conspiracy to violate a U.S. law.

     With respect to whether this conviction constitutes an

aggravated felony, we refer to INA Section 101(a)(43)(R) and

101(a)(43)(U).  Section R calls an aggravated felony "an offense

relating to commercial bribery, counterfeiting, forgery, or

trafficking in vehicles, the identification numbers of which have

been altered, for which the term of imprisonment is at least one

year."  Section U includes within aggravated felonies, "an

attempt or conspiracy to commit an offense described in this

paragraph."  The Immigration Service has suggested that Paragraph

U may not be necessary in order to support deportability because

Paragraph R includes an offense "relating to" counterfeiting or

forgery and a conspiracy to counterfeit or a conspiracy to forge

would be "relating to" those crimes.  While, in a general sense,

it would be a crime "relating to" those underlying substantive

crimes, such a reading would also render Paragraph U superfluous

in the context of Paragraph R.  And the Court would, rather than

read relating to in Paragraph R as indicating that if a crime is

A 41 928 716                    3                    October 15, 1999

,G

not technically called counterfeiting or is not technically

called forgery, etc., but has substantially the same elements,

that such a crime is relating to a crime of counterfeiting or

forgery and that Paragraph U is necessary.  It has been pleaded,

however, the respondent has had a reasonable opportunity to

respond, and has denied deportability on that ground as well.

The Court must therefore decide whether or not he is deportable

under Section U and R together.

Counsel for the respondent has submitted a substantial brief

arguing that the underlying facts of the case show that the

respondent has only carried out certain overt acts that would, at

best, constitute other crimes, if even that.  In particular, his

participation in the conspiracy was to receive checks made to his

own name, which were proceeds of other checks that had been

forged or counterfeited or, according to the pre-sentence

investigation report in this case, apparently both.  The issue,

however, is not whether the overt act, which the respondent

committed in furtherance of the conspiracy, also constitutes the

substantive crime which forms the basis of the conspiracy charge.

It is clear from the general law regarding conspiracy that both

an agreement and an overt act in furtherance of the agreement is

sufficient for conspiracy to take place.  The agreement could be

an agreement to rob a bank and the only overt act that a

particular party may play in the conspiracy may be to drive the

getaway car.  If the person drives the getaway car without

A 41 928 716                        4                    October 15, 1999

G

speeding or running a red light, it may be argued that he has not

committed any crime in his overt act and that would be the case.

Such a person would, nonetheless, be guilty of the conspiracy

because the overt act does not have to be the crime of bank

robbery in order to show that he is a participant in a conspiracy

to rob the bank.  We have a similar circumstance here, clouded,

however, by the fact that the overt act on respondent's part is

very close to, but perhaps not quite, the same as the underlying

substantive offense.  There is, therefore, a large number of

federal court cases pointed to the distinction between the

respondent's actual signing of checks made out to him in his name

and what would constitute the elements of forgery or

counterfeiting or uttering or possessing forged or counterfeited

documents.  But it is not the documents, the checks, made out to

the respondent and cashed by him that is the underlying forgery

here or counterfeiting, it is rather the making of checks that

were unauthorized in the name of a company to people to whom they

were not actually paid, to which co-conspirators signed forged

endorsements which were then deposited, and the checks made from

the deposited account were made out to the respondent.  In the

end, however, it is not for this Court to determine whether or

not the actual facts presented (in this case in the pre-sentence

investigative report) demonstrate that the respondent was, in

fact, guilty as found by the Federal District Court.  It is

enough that he was found guilty of conspiracy under Section 371

A 41 928 716                      5.                    October 15, 1999

LG

to commit the underlying crime under Section 513(a).  We
therefore look not to the underlying acts committed by him but to
the indictment to see whether or not that necessarily requires a
finding that Section 101(a)(43)(R) is satisfied.

In the Court's view, an examination of Section 513(a) does
require a finding that a conviction of conspiracy to commit that
crime necessarily entails finding of a conspiracy to commit the
type of crime listed in INA Section 101(a)(43)(R).  It is either
forging or counterfeiting that makes a person liable under
Section 513(a).  The indictment in this case alleges both so that
it is fairly clear that he was convicted of both.  Even if there
should be some question as to whether in the plea he plead to
conspiracy to utter or possess a forged check or whether he plead
only to conspiracy to utter or possess a counterfeit check, this
Court holds that whichever it was, nonetheless it meets the
requirements of Section 101(a)(43)(R).  It is therefore clear and
convincing that the respondent has been convicted of the crime of
conspiracy to commit an offense in 101(a)(43)(R) and is therefore
deportable under INA Section 101(a)(43)(U).

We left out one provision, which we should discuss now, and
that is the sentence.  Obviously a mere conviction under Section
101(a)(43)(U) and (R) is not sufficient to show an aggravated
felony because of the requirement in Paragraph R that the
sentence imposed be for "at least one year."  In this case, the
Federal District Court sentenced the respondent to one year plus

LG

one day.  It is clear that the Federal Court intended for there

to be no ambiguity that the underlying sentence reflected a

felony conviction as defined under federal law and that one day

may make all the difference in the world if he had been sentenced

to only one year (i.e., at most one year), which may not

necessarily overlap with "at least one year" in Section R.  Or,

certainly, if he had been sentenced to a day and a minute less,

the crime would clearly not be an aggravated felony because the

sentence would not be at least one year.  It is therefore a close

issue, in fact, as to whether or not the respondent has been

convicted of an aggravated felony.  But it is a very clear issue

under law that the respondent has fallen on the side of one year

with this conviction that makes his crime an aggravated felony.

This is the second and necessary basis for concluding as the

Court did at the end preceding paragraph that the respondent has

indeed been convicted of an aggravated felony.

    He makes application for asylum, withholding, and relief

under the Convention Against Torture.  By virtue of his

conviction being for an aggravated felony, he is not eligible for

asylum.  The question is whether he is eligible for withholding

of deportation under Section 241(b)(3) and under the Convention

Against Torture and also whether he is eligible for deferral of

deportation under the Convention Against Torture.  The Court

finds he is clearly eligible for deferral because there are no

proscriptions against that based on a person's criminal

G

convictions.  With respect to withholding of deportation, the
Court finds that the respondent has not been convicted of a
particularly serious crime.  The sentence is right at the
threshold of a sentence that makes his crime an aggravated felony
or not.  The circumstances of the crime show that the
respondent's participation did occur over the period of a month
and was apparently conscious activity.  On the other hand, the
crime itself was not violent.  The victim was a bank.  This does
not indicate that banks can afford such losses but the loss is
different when it is a company or an organization that is insured
versus one where the loss will actually have to be suffered by
the victim in the case of say a robbery or battery or something
of that nature.  Nonetheless, society, through insurance and
losses to the bank if not insured, ultimately pays the price for
the respondent's game.  The respondent has no history of other
crimes, either violent or nonviolent.  This means also that he
has no history of other crimes of forgery or counterfeiting or
conspiracy so that the context with this particular crime fits is
not one that shows that his action breaks the camels back by
being the final straw that in a long series of other criminal
activity.  So for the foregoing reason, the Court finds that his
crime is not a "particularly serious crime" such that even if his
life or freedom is threatened in his home country, he should be
sent there anyway.  Ultimately, in Matter of S-S- and Matter of
Q-T-M-T-, and Matter of L-S-J-, we are cautioned by the Board

A 41 928 716                        8                    October 15, 1999

.G

that the purpose of the amendments to the withholding statute
were made in order to keep the United States in compliance with
an international treaty that is intended to protect people.  In
light of this being the context, we should resolve doubts in
favor of protection rather than in favor of deportation.

     With respect to the substance of the respondent's
withholding claim, the Court will first recite the factual basis.
Respondent left Guyana in 1988, and as recited earlier, went back
a year later to get married.  He also went back in 1991 and 1993.
He became part of an organization in Brooklyn, New York, which he
said is a "support group" for the People's National Congress in
Guyana.

     The People's National Congress (PNC) is the political
opposition party.  The State Department Country Report shows that
it has generally not had a majority in the parliament.  And the
Statement Department also notes a kind of "winner take all"
system in which the president is elected by popular vote and then
the members in parliament are apportioned according to total
votes.  The PNC did, according to the State Department, contest
the validity of elections in 1998 and the membership of
parliament stayed out of their seats for seven months and engaged
in protests (the State Department calls them "illegal" under
Guyana law because permits are required to obtain them and the
party members did not obtain permits, apparently on principle).

     The respondent did not present evidence showing that the

A 41 928 716                          9                      October 15, 1999

.G

Guyana association in New York City is, in fact, a primary
supporter of the PNC party.  On the other hand, the State
Department notes that there is a fairly strong racial divide
among the various parties and that the PNC is made up largely of
people of African descent whereas the People's Progressive Party
is made up primarily of people of Indian descent (i.e., from
India) and, therefore, seems plausible to this Court that an
organization in Brooklyn of Guyanese may have the same racial
division as is found in country.  And if so, it would be natural
for such an organization, of which the respondent is a member, to
be a supporter of the People's National Congress (the respondent
is of African descent apparently).  The respondent testified that
the goals of the PNC were to cooperate and build one people, one
nation, and one destiny.  He became a member in 1990.  He was
involved in an import/export business (this is verified also in
the pre-sentence investigation report) involved in trade to
Guyana and the rest of the Carribean.  He did not deal directly
with the government of Guyana but with a company called King
Solomon.  He did not know what political affiliation that company
had.  Respondent testified that he joined the PNC in 1990 and
attended some 10 meetings altogether, presumably up until the
date of the hearing.  This would be about one per year or a
little more.  At the meetings, he said they discussed getting the
PNC into power and the meetings would last about an hour and a
half.  He could give the names of the leaders, including a

.G

certain Michael Blackman.  The respondent himself was a recruiter
after some time and also organized bingo, lotteries, and so on to
raise money, besides getting people to try to join (he started as
a recruiter in 1992).  The number of people in the organization
was about 300.  While he was a recruiter, he also dealt with
people in the PNC outside of the United States, including a
certain Mohammad Singh in Georgetown, Guyana, in order to know
what was going on in Guyana.  Mr. Singh apparently has not been
to the United States.  Although he has an Indian name, he is a
member of the PNC.  The respondent was unable to say, however,
what Mr. Singh's position was in the PNC or whether he had any
position in the PNC.  He was asked then why he would contact him
relating to his job as a recruiter and he said it was to get
information.  Money collected by the PNC in New York was sent to
Guyana, not through the respondent so he did not have contacts
with people in Guyana by sending money.

The respondent testified that in October of 1993, he went to
Guyana and stayed a mere four days because the first night he was
there, he was taken to the police precinct and asked questions
about Mohammad Singh.  Mohammad Singh had been arrested.  The
respondent said, however, that he did not know anything about
Mohammad Singh.  He described in some detail about sitting in a
car alone with four police, handcuffed, that he was arrested in
front of his mother's house, and taken to a specific precinct
called the Georgetown Precinct about 45 minutes (16 miles) from

LG

his home by car.  They actually questioned him first at the house

and the nature of the questions were how he knew Mohammad Singh

and whether he knew Mohammad Singh.  He was asked in Court

whether he was accused of anything and he said he was accused of

trying to recruit for the PNC in the United States.  The

questioning lasted some three hours.  He did not go to jail

because his mother bailed him out.  He was released the third day

by what was really a bribe rather than bail.  He does not know

the amount.  He left Guyana the following day after he was

released.  He did so because he was scared and had not actually

planned to leave Guyana so soon.  This event caused him to leave

the PNC in New York because he was afraid.  And although he

strongly believed in the PNC, he was afraid what may happen to

him in the future.

The respondent has not heard of Mr. Singh since.  He does

not know Mr. Singh's fate but believes he still is in custody.

The respondent has not presented any letters from the PNC in

Guyana or the Guyana association in New York City.  He believes

that if he returns, he will be punished because of his escape.

He believes that he will be held naked in a cell with no food and

that he would be punished because the police needed information

on this Mr. Singh.

The respondent has six brothers and three sisters.  Two

brothers live in the United States, the other seven live in

Guyana.  The pre-sentence investigative report also shows that

A 41 928 716                        12                    October 15, 1999

LG

those who live in Guyana are apparently employed and give no
indication of any problems that the rest of the family has had.

The Court finds the respondent's testimony with respect to
his fear in Guyana to be general.  It is lacking in detail in
areas that one would expect detail if indeed his problem through
Mr. Singh was a problem brought on by political activities.  He
would have had sufficient communication with the Guyana
association of New York to know the fate of Mr. Singh, especially
if the respondent's very ability to return to his home country
now, some five or six years later, may lie in the hands of this
Mr. Singh.  There is the possibility that the respondent was
arrested because he gave fairly detailed evidence of that.  It is
possible that he dealt with a Mr. Singh as well but it could as
easily be that he dealt with Mr. Singh through trade rather than
through the PNC, especially given that the State Department
Reports say substantial division among the political parties
between Indians from India and Afro-Guyanese.  The fact the
respondent, instead of continuing with the PNC support
organization in New York, dropped out of it after his problem, is
a further suggestion, or at least raises question about whether
the problem he had was related to his devotion to the PNC in the
first place, or rather was related to something else.  The
respondent has no corroborating evidence regarding his
participation in politics in Guyana or the United States.  He has
no corroboration that the certain Mr. Singh was involved in

A 41 928 716                        13                    October 15, 1999

,G

politics in Guyana, or that the problems that he had, if indeed

he had problems, were on account of his political participation

(I'm referring to Mr. Singh). This is the very backbone of the

respondent's claim. The Court also heard his testimony in light

of the State Department's Country Report, which although it makes

some of the comments the Court observed earlier regarding the

winner take all nature of politics and also comments on the lack

of independence of the judiciary in Guyana, nonetheless does not

speak of political or extrajudicial killings as being a major

problem, although there are still some serious problems. There

was a politically motivated killing and some nine extrajudicial

executions by the police in the previous year (and in addition,

27 in 1997 and 18 in 1996, indicating some fairly serious and

lingering problems with the police in Guyana). And it reports

that there continues to be complaints of victims beaten in police

custody, some 20 per year from 1995 to 1997, and in 1998, only

one. The State Department reports, however, that apart from

official complaints, it does give credence to what inmates,

attorneys, and judicial authorities consider evidence that police

frequently turn a blind eye while other inmates beat, rob, or

otherwise mistreat "problematic" prisoners. State Department

Report at page 650. On the other hand, there is a general

respect by the government of the independence of the judiciary in

human rights cases apparently sensitive to the political

ramifications of not being independent. See page 651. The

A 41 928 716                     14                    October 15, 1999

ILG

authorities generally respected the personal and individual

liberty of people by not having arbitrary arrests and detentions,

although arrests without warrants are permitted.  See page 651.

There are no politically motivated disappearances and the people

do have the general civil rights of freedom of speech and press.

The State Department states unequivocally the government respects

these rights in practice, referring to freedom of speech and the

press, and adds "citizens openly criticize the government and its

policies."  See page 652.  The Court therefore finds that the

respondent's concerns, based on what he says happened to him in

his trip to Guyana, are not plausible.  If his concerns are read

as a fear of political persecution, and that is indeed how the

respondent reads them, the Court does not find that plausible in

this context.  It therefore finds the respondent has not met his

burden of proof of setting forth facts which would show that it

is more likely than not that he would be persecuted for political

reasons if he were to return to Guyana.

    With respect to the Convention Against Torture, given that

the underlying situation that the respondent has described is not

plausible, the Court does not have a basis in what he testified

to, to find that the respondent would likely be tortured for any

reason if he returns to Guyana and it therefore denies his claim

under the Torture Convention, either for withholding or for

deferral.

    This is a kind of case that would have been dealt with much

A 41 928 716                        15

.G

differently before the passage of IIRAIRA.  The respondent is a

long time resident of the United States.  He has many important

and very sympathetic equities that would be taken into

consideration in cancellation of removal or a 212(c) waiver.  The

letters from his wife on her behalf and behalf of their children

are very strong equities, to have children grow up here in the

United States without a father or be required to go to a country

that has not really been theirs since they were very young, in

which the annual income is described by the State Department as

$808 per year, is an unbearable hardship.  Despite those

equities, however, they cannot be used to supplant the other

requirements for withholding of deportation or political asylum.

And while the respondent has made an effort to remain in the

United States, the Court finds that based on the law, there is no

other relief other to him, such as 212(c) or cancellation of

removal, that would address more directly the equities that he

does have.

Law often has an arbitrary quality about it.  This can be

found especially when we have cutoff dates or other time periods.

The fact that the respondent could have been sentenced to two

days less than he was sentenced to and be eligible for

cancellation of removal is an indication of this certain

arbitrariness that exists when there are cutoffs.  That

arbitrariness is exaggerated when the cutoff periods are very

short, like one year.  Under prior law, a person had to not only

G

be sentenced to five years but had to actually serve that amount
of time.  There, an absolute cutoff between somebody who had
served four years 364 days and somebody would serve five years
and one day may not appear to be arbitrary because the person who
had served the four years and 364 days had also been convicted of
and served time for what must be a rather serious offense.  When
the very right of people to remain in the United States gets
tangled with our long tradition of whether a crime is serious
enough to be a misdemeanor or a felony, then the arbitrariness of
the process of the cutoff point is exaggerated.  Just as this
respondent falls barely on one side of the line, another could
fall barely on the other side of the line.  The point here is
that the Congress has taken away one of the important buffers
between individuals and big government and that buffer is the
Court.  The very nature of courts in a three-branch government is
to serve that function, is to play the role of making universal
law fit individual circumstances, and the Judge must always
consider both applying the law evenly and universally to everyone
on the one hand, and taking individual factors into account on
the other hand.  This was done under the old 212(c) law, which
set out general parameters and general requirements for
eligibility and then required Judges to state with particularity
the reasons for or against the person's remaining in the United
States.  Those decisions were subject to appeal by either party
and the Board of Immigration Appeals made the ultimate decision

A 41 928 716                    17              October 15, 1999

LG

in such cases.  Records apparently show that about half the cases
were granted, if not a little bit more, and half denied,
indicating that throughout the country, genuine discretion was
being exercised in cases far more serious than this respondent's
case.  Although there are efforts that make the newspaper to
change the law, some of which are bills submitted by members of
Congress themselves, including some who supported IIRAIRA, the
law that we have in effect today is the law the Court must apply.
It obviously cannot speculate as to what law will be in the
future.  In applying the law today, the Court has no door open to
this respondent to consider the merits of his claim to staying in
the United States in the exercise of discretion.  It must
therefore issue the following order.

IT IS ORDERED that the application for political asylum is
pretermitted on the grounds of the respondent having committed an
aggravated felony.

IT IS FURTHER ORDERED that the application for withholding
of deportation because of the fear of persecution shall be and is
hereby denied on the ground of the respondent's failure to meet
his burden of showing that it is more likely than not that he
would be persecuted in Guyana.

IT IS FURTHER ORDERED that the application not to be sent to
Guyana under the Convention Against Torture is denied on the
grounds that the respondent has not shown it is more likely than
not that he would be tortured for any reason in Guyana.

A 41 928 716                18              October 15, 1999

.G

　　　IT IS FURTHER ORDERED that the respondent shall be deported

to Guyana.

　　　　　　　　　　　　　　　　WILLIAM VAN WYKE
　　　　　　　　　　　　　　　　Immigration Judge

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before WILLIAM

VAN WYKE, in the matter of:

GLADWIN WILSON

A 41 928 716

YORK, PENNSYLVANIA

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.


(Deborah L. Galdamez, Transcriber)
Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland  20852
(301) 881-3344


December 12, 1999
(Completion Date)

**EXHIBIT 5**


**Docket Sheet**

**Home**   **PACER**   **Full Docket**                                                        **Help** 

If you view the full docket, you will be charged for  4  Pages     $ 0.28

## US Court of Appeals for the Third Circuit
## Case Summary

Court of Appeals Docket #: 00-1762                              Filed: 6/6/00
Nsuit:   0
Wilson v. Atty Gen USA
Appeal from: Immigration & Naturalization Service

Lower court information:
    District: 0090-1 : A41 928 716
    Date Filed: **/**/**

| | |
|---|---|
| 6/16/00 | DISCLOSURE STATEMENT on behalf of Petitioner Gladwin Wilson, filed. (ghb) |
| 6/16/00 | DOCKETING STATEMENT on behalf of Gladwin Wilson, received. (ghb) |
| 6/19/00 | FOLLOW UP LETTER to Robert L. Bombaugh and Janet Reno requesting the following documents: **Appearance Form (ghb) |
| 6/26/00 | APPEARANCES from Attorneys Christopher C. Fuller and Matthew R. Hall on behalf of Respondent Janet Reno, Attorney General of United States, filed. (ghb) |
| 7/14/00 | ADMINISTRATIVE RECORD filed. (ghb) |
| 7/14/00 | BRIEFING NOTICE ISSUED. Petitioner brief and appendix due 8/23/00. (ghb) |
| 7/17/00 | MOTION by Respondent Janet Reno, Attorney General of United States, to dismiss appeal for lack of jurisdiction, filed. Answer due 7/27/00. Certificate of Service dated 7/14/00. (ghb) |
| 8/11/00 | RESPONSE by Petitioner Gladwin Wilson in opposition to motion by Respondent Janet Reno, Attorney General of United States, to dismiss case for lack of jurisdiction, received. Certificate of service dated 8/11/00. [Not filed unless the Court directs]. (ghb) |
| 8/12/00 | BRIEF on behalf of Petitioner Gladwin Wilson, Pages: 19, Copies: 10, Delivered by mail, filed. Certificate of service date 8/12/00. (gas) |
| 8/22/00 | ORDER (Scirica, Alito, Authoring Judge, and Stapleton, Circuit Judges) granting motion by Respondent Janet Reno, Attorney General of United States, to dismiss case for lack of jurisdiction, filed. C-92 (ghb) |
| 8/22/00 | Certified copy of Order sent to agency. (ghb) |
| 8/22/00 | RECORD RETURNED. (ghb) |